## THE TRITON.

## THE NANTICOKE.

(District Court, S. D. New York. March 20, 1917.)

Collision ⟨⟩—95(3)—Meeting Tows—Length of Hawser—Failure to Keep Lookout.

The tug Lackawanna, with a tow, was passing eastward in Nantucket Sound at night, when she came into collision with the meeting barge Nanticoke, in tow of the tug Triton, on a 200-fathom hawser, and was sunk. There was some fog, but at the time the vessels could see each other's lights, and the tugs passed port to port at a distance of 800 to 900 feet; but, although the Lackawanna ported afterward, she was struck by the tow on the port side about amidships. Held, on the evidence, that the Nanticoke was in fault for not following her tug, and for failing to have a lookout, especially in view of the fog; that the Triton was also in fault for using a hawser more than twice the length of 75 fathoms permitted by statute, and for going at excessive speed.

In Admiralty. Suit for collision by the Delaware, Lackawanna & Western Railroad Company, owner of the tug Lackawanna, against the steam tug Triton and the barge Nanticoke. Decree for libelant against both vessels.

A. J. McMahon, of New York City, for libelant.

Duncan & Mount, of New York City, for claimant Susquehanna Coal Co.

Kremer & Leavitt, of New York City, for Fischerauer, etc.

E. E. Blodgett, of Boston, Mass., and Floyd Hughes, of Norfolk, Va., for Triton & Lambert Point Towing Co.

MANTON, District Judge. This libel, filed against the steam tug Triton and the barge Nanticoke by the owners of the Lackawanna, seeks to recover for the complete loss of the tug, the property of the crew, and the lives of two.

⟨⟩—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Lackawanna was bound east, towing three barges connected by hawser, and the Triton bound west, with a hawser 200 fathoms long and towing one large barge, the Nanticoke. The collision occurred August 15, 1915, at about 9:15 p. m., at a point about 2½ miles east of Handkerchief Shoal Lightship, in Nantucket Sound. While crossing Cross Rip Shoals, about 20 minutes before the collision, the Lackawanna blew a signal to the barges to prepare to anchor, and this because a fog had set in, and then changed her course from east to nearly northeast. Before the Lackawanna's tow had sheared from its course, a signal was heard about two points on the Lackawanna's starboard bow. Realizing that she was crossing the course of the west-bound vessel, the master testified he immediately put his tug back on the easterly course. Shortly thereafter, the lights of the Triton were seen, and at the same time the Triton saw the lights of the Lackawanna. At this time the vessels were about 1,000 feet apart, as stated by the Lackawanna, and about half a mile, as stated by the crew of the Triton. The Triton blew a passing signal, and heard the signal of the Lackawanna. The two tugs then saw each other, and navigated properly for a port to port passing, and passed each other port to port a safe distance of between 800 to 900 feet. However, the barge Nanticoke, while passing, collided with the Lackawanna, striking the Lackawanna on the port side about amidships and practically at right angles.

The Triton claims that the Lackawanna, after passing her, starboarded its helm and went to port, gradually approaching the course of the Triton and its tow, and that because the Nanticoke at this time was not following in the wake of its tug, but was about a point to a point and a half off the port quarter of the tug. It says that by thus converging the course of the Triton and her tow, it brought about, or helped to bring about, the collision. The Triton says that this change of course was apparent, because the Lackawanna's high lights, which were visible from astern only two points abaft the beam of the tug, remained visible from the Triton after the Lackawanna had passed the Triton. When the Triton saw the Lackawanna turning to port, fearing a collision, it blew a signal, "Attention," and "Port Helm," to the barge Nanticoke. It could not say that the Nanticoke heard the signal or obeyed it. It says that immediately afterward the fog shut in and obscured them, so that at the time of collision neither the barge nor the Lackawanna were visible.

This does not explain how the Lackawanna could be struck on the port side. The Lackawanna claims that it exchanged passing signals with the Triton, after which it ported its helm and drew further away from the Triton and its tow; that the high lights of the Nanticoke were then visible, and appeared to be in the wake of the Triton, and then, after passing the Triton astern, it saw the barge was not following in the wake of its tug, but was swinging off to the port toward the course of the Lackawanna. The Lackawanna then rung for "full speed ahead," because the barge was then approaching so near to the course of the Lackawanna so rapidly that there was no opportunity to avoid a collision. At the time when the Lackawanna blew the alarm signals and put its helm aport only the high lights

of the Nanticoke were visible; but shortly afterward, and just before the collision, the Triton hull and her green lights appeared, and the Nanticoke struck the Lackawanna on the port side. At the time of the collision the Lackawanna was headed almost southeast, and the Triton was headed almost northwest. This version, as given by Brophy and Kolner, I believe to represent the true facts of the happening.

The Triton was moving westward at about 4½ miles an hour, and the Lackawanna was moving eastward at about 2½ to 2¾ miles an hour. All three boats were visible from the time passing signals were exchanged by the tugs until the collision. The master of the Nanticoke claims that the fog continued up to this time. This must be rejected, for the two masters and two mates of the tugs say the lights were visible one-quarter to a mile, while the tows were passing, and that they had ceased to blow fog signals. The Lackawanna had electric light, and the Nanticoke oil lights. With the speed of the boats as stated, and the two tugs passing from 700 to 900 feet apart, and considering the length of the hawser between the Triton and the Nanticoke, it was physically possible for this collision to have occurred in the manner described by the Lackawanna, assuming that the Lackawanna took the course it claims to have taken at the time of the collision. It was the fault of the barge Nanticoke in not following the wake of the tug which brought her into collision with the Lackawanna on the port side. The theory of the Triton I do not think plausible, and it should be rejected.

The Nanticoke was off its course, and this claim is corroborated by the testimony of the Triton. The Lackawanna was heading substantially southeast at the time of the collision, and this is corroborated by the testimony of the master of the Nanticoke. I am also of the opinion that the Nanticoke was at fault for failing to have a lookout. She was 202 feet long, her pilot house was on the stern of the barge, at least 175 feet from the bow, and she was obliged to anticipate fog at intervals. For this fault she should be held. Davenport v. Winnisimmet, 162 Fed. 862, 89 C. C. A. 552; The Edward G. Murray, 234 Fed. 61, 148 C. C. A. 77. She was also at fault for failing to have a competent man at her wheel and to follow in the wake of her tow.

I think that the Triton is also at fault, and should be held. She was towing with a hawser in excess of that permitted by statute. The statute permits a hawser not exceeding 75 fathoms. The Triton admits that its hawser was 150 to 160 fathoms in length, while the master of the Nanticoke says it was 200 fathoms long. If it were not for the length of the hawser, the collision might have been avoided. The Lackawanna was 500 feet off the Triton's hawser when it had reached a point half way between the Triton and the Nanticoke. One-half the distance between the Triton and the Nanticoke was about 600 feet. There could have been no collision if the Triton had been towing with a hawser of the length prescribed by statute, for the Nanticoke could not have swung off at right angles in such a course as to come in contact with the Lackawanna. Even assuming the Lackawanna had converged on the Triton's course 300 feet, when it had reached a point approximately 500 feet astern of the Triton, that would be more than 75 fathoms from the stern of the Triton. Towing with such a hawser

has been held to be a fault. The Manhattan, etc. (D. C.) 181 Fed. 229; The Teaser (D. C.) 229 Fed. 476; McWilliams v. D., L. & W. R. R. Co., 207 Fed. 64, 124 C. C. A. 624. She was running, the captain says, at 4½ knots an hour; the chief engineer says, "running wide open—all the steam I could get." The Lackawanna had been at half speed for 15 or 20 minutes because of the fog through which she came. The Triton had heard the fog whistles before seeing the Lackawanna, and was obliged, by the rules, to go at a slower speed, having careful regard to the existing circumstances and conditions, by Pilot Rules, article 16. If the fog rule did not apply, then she might well be held to be at fault for violation of Pilot Rules, article 69. I consider that she was at fault because of excessive speed. City of New York, 147 U. S. 72, 13 Sup. Ct. 211, 37 L. Ed. 84; The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, 41 L. Ed. 1053.

Accordingly I shall grant a decree for the libelant against the Triton and the Nanticoke.